UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL GRAHAM BARLOWE,<br><br>Plaintiff,<br><br>v.<br><br>PAMELA BONDI, et al.,<br><br>Defendants. | Case No.  25-cv-04875-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Re: Dkt. Nos. 21, 25, 26 |

In this employment discrimination suit, plaintiff Russell Graham Barlowe ("Barlowe") alleges that his former employer, the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), engaged in a discriminatory campaign to force him to retire early.  He brings two causes of action, one for violations of the Whistleblower Protection Act ("WPA") and one for harassment, discrimination, and retaliation under the Age Discrimination in Employment Act ("ADEA").  Defendants now move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Barlowe failed to exhaust his administrative remedies before bringing his WPA claim, that claim must be dismissed.  And although he lumps three separate theories (intentional discrimination, harassment and retaliation) into his ADEA claim, I conclude that it is sufficient to state a claim for age discrimination.  Defendants' motion is GRANTED with leave to amend if Barlowe wishes.

**BACKGROUND**

**Factual Background**

The following facts, presumed true, are derived from Barlowe's First Amended Complaint ("FAC").  *See* FAC [Dkt. No. 3].  Barlowe is a 59-year-old man who was "formerly employed as a special agent in the ATF."  FAC ¶ 13.  During his thirty-six years with ATF, Barlowe "rose to the

position of the Resident Agent in Charge (RAC) of the Sacramento Field Office, where he managed ATF's Criminal Enforcement responsivities for the 19 northeastern counties of California." *Id.* ¶ 14.  He had a "reputation of being 'ethically old school' who always played by the book," which his supervisors in the San Francisco Division ATF headquarters did not like.  *Id.* ¶ 15.

Around February 27, 2018, Barlowe "reported a Special Agent to the Office of the Inspector General (OIG) for policy violations."  *Id.* ¶ 16.  As the OIG's investigation proceeded, "agents and members within management at the ATF Headquarters San Francisco Division, became aware that it was [Barlowe] who had made the policy and practices complaints, and that [Barlowe] was cooperating with the . . . investigation."  *Id.* ¶ 17.  Management "knew that [Barlowe] was over 50-years old at the time of his complaints and that the mandatory retirement age is 57."  *Id.* ¶ 18.  Accordingly, Barlowe alleges that management "commenced a campaign to force [him] to retire early based on his age and ethical old school ways."  *Id.*

Barlowe maintains that numerous incidents support his theory of age discrimination. These include:

- In April 2018, "a member of management conducted an ad hoc review of documents from [Barlowe]."  *Id.* ¶ 19.  Barlowe maintains this was "unusual" as the "individuals doing the review were not in [his] chain of command and were not a part of the San Francisco Division."  *Id.*

- In May 2018, Barlowe requested whistleblower protection and "made a formal internal complaint concerning violations of the agency's policies and practices surrounding" the agent he reported.  *Id.* ¶ 20.  He also filed a complaint with the Office of Special Counsel (OSC), who opened an investigation.  *Id.*  But the OSC "closed [his] case without rendering a decision when it learned that [he] had submitted a complaint for age discrimination, harassment, [and] retaliation."  *Id.*

- In July 2018, Barlowe learned "he was no longer authorized to approve the opening of new cases, the expenditure of agent cashier funds, or enforcement operations for the Sacramento Field Office."  *Id.* ¶ 22.  "Without these functions, Barlowe [was] unable

United States District Court
Northern District of California

United States District Court
Northern District of California

to do his job." *Id.*

- While the OIG investigation was underway, Barlowe "requested a copy of the completed Management Directed Review on several occasions, but it was not provided to him," despite it being "customary to share a copy of the review so that the subject of review can respond." *Id.* ¶¶ 24, 28.

- In August 2018, Barlowe's team faced an "unprecedented" inspection by the Office of Professional Responsibility and Security Operations, "spann[ing] a period of 31 months" and 187 cases, much more than the typical twelve month and twenty case inspection. *Id.* ¶ 25. Barlowe maintains this inspection was initiated to "put such an increased workload on [him] that he would choose to retire rather than go through such an inspection." *Id.* ¶ 26.

- In September 2018, Barlowe was "temporarily assigned to the San Francisco Division, with no significant duties." *Id.* ¶ 27. Barlowe maintains this was to "publicly shame [him] and create the impression that he was being formally disciplined, when in fact, no discipline had been proposed or formally decided." *Id.*

- On October 12, 2018, the Special Agent in Charge advised Barlowe that "the findings from the Management Directed Review would be included in his Fiscal Year 2018 Employee Performance Evaluation, without the opportunity for review and rebuttal." *Id.* ¶ 29. This placed him in a position "where his annual performance review contained information that was incorrect, disputed and attributed to a draft document that he was unable to review or challenge." *Id.* After learning about this decision, Barlowe filed a second EEO complaint. *Id.* ¶ 30.

- On January 2, 2019, Barlowe was issued a two-day suspension without pay based on the findings of the OPRSO report. *Id.* ¶ 32. He was only then provided a copy of the OPRSO report for the first time. *Id.* The report showed that Barlowe's review was "unprecedent[ed] in scope." *Id.* ¶ 33. It also "included references to [Barlowe's] alleged issues with computer-based errors, paperwork timeliness issues, lost paperwork, and an overall lack of attention to detail." *Id.* He alleges these are "code

words that really reference [his] age and perceived age-related deficiencies." *Id.*

- On February 4, 2019, Barlowe filed an internal age discrimination complaint with the ATF EEO. *Id.* ¶ 34. On February 5, 2020, the Associate Deputy of the Office of Field Operations for ATF "rescinded the two-day suspension and, instead, issued [him] a letter of reprimand." *Id.* Later, on April 21, 2020, after Barlowe filed a formal grievance, the Acting Director of ATF "rescinded the letter of reprimand and subsequently removed it from [his] personal file." *Id.*

- Barlowe was "forced to retire early (at age 56) in March 2022." *Id.* ¶ 35. At this time, "up to three-year extensions were being offered and [Barlowe] intended to work until age 60 before retiring." *Id.* But the "mental and emotional stress" resulting from defendants' actions "ma[de] it more difficult to do his job than it otherwise would have been without the added stress." *Id.*

**Procedural History**

Barlowe first filed a complaint with the OSC in June 2018. FAC ¶ 10. The OSC "opened an investigation but, on information and belief, . . . closed [the] case without rendering a decision when it learned that [Barlowe] had submitted a complaint for age discrimination, harassment, retaliation (including whistleblower retaliation) to the ATF EEO in 2019." *Id.* Barlowe then contacted an EEO Counselor on October 9, 2018, reasserting his claims. *Id.* ¶ 11. He ultimately filed a formal complaint with the ATF on February 4, 2019, which the ATF accepted for investigation on March 12, 2019. *Id.* After the investigation, the ATF EEO "provided [Barlowe] with a copy of the report of the investigation and issued him a notice of right to request a hearing before the Equal Employment Opportunity Commission (EEOC)." *Id.* On September 9, 2022, an EEOC judge "issued a decision without hearing, finding no discrimination." *Id.* The ATF adopted the EEOC decision in its final order on October 12, 2022. *Id.*

Barlowe filed an appeal on November 8, 2022. *Id.* ¶ 12. Around March 11, 2025, the EEOC "issued its decision affirming the ATF's final order implementing the administrative judge's decision finding no discrimination." *Id.* The decision was accompanied by a notice indicating that Barlowe had "90 days from receipt of the decision to file a civil action." *Id.*

Accordingly, Barlowe filed his complaint on June 9, 2025, asserting age discrimination, harassment, and retaliation under the Age Discrimination in Employment Act ("ADEA"), and violations of the Whistleblower Protection Act ("WPA") against defendants Pamela Bondi ("Bondi"), the AFT, and Does 1–50. Complaint [Dkt. No. 1]. He amended his complaint that same day, which became the operative complaint. FAC.

On February 17, 2026, defendants filed their motion to dismiss the FAC. *See* Defendants' Motion to Dismiss First Amended Complaint ("Mot.") [Dkt. No. 21]. Barlowe filed his opposition on April 10, 2026. *See* Plaintif's Opposition to Motion to Dismiss First Amended Complaint ("Oppo.") [Dkt. No. 25]. Defendants replied on April 24, 2026. *See* Defendants' Reply in Support of Motion to Dismiss First Amended Complaint ("Repl.") [Dkt. No. 26].

**LEGAL STANDARD**

**Rule 12(b)(1)**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

(citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.* (citations omitted).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

**Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

If deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) *overruled, in part on other grounds by, Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  In making this determination, the court should consider factors such as "the presence or absence of

6

undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

As an initial matter, Barlowe "does not oppose the defense's arguments as to the following: that the ATF and individual Doe defendants cannot be named as defendants, that he, as a federal employee, does not have a right to a jury trial for an ADEA claim, and that damages for emotional distress and punitive damages are not available under the ADEA." Oppo. at 2 (citing Mot. at 8–9 (arguing the only proper defendant in an ADEA suit brought by a federal employee is the head of the department or agency); *id.* at 11 (seeking to strike Barlowe's request for a jury trial under the ADEA); *id.* at 11–12 (moving to strike requests for compensatory and punitive damages)). I therefore DISMISS this case WITH PREJUDICE as to the ATF and Does 1–50, and STRIKE Barlowe's requests for compensatory and punitive damages and a jury trial under the ADEA. I address the remaining disputed arguments below.

I.    **ADEA Claim**

Barlowe's first cause of action asserts "Age Discrimination/Harassment/Retaliation" in violation of the ADEA. FAC ¶¶ 36–38. Defendants argue that this claim should be dismissed for three independent reasons: that Barlowe fails to (1) state a claim for hostile work environment or constructive discharge, *see* Mot. at 7–8; (2) state a claim for age discrimination, *see id.* at 8; and (3) establish how any pre-August 2018 facts supporting the ADEA claim are not time-barred, *id.* at 9–11. I understand why defendants have separated out the theories in this cause of action and identified their weaknesses. The barebones way the cause of action is pleaded is a mishmash that does not cleanly identify the facts that apply to each theory. That said, I interpret the First Claim for Relief as stating one claim for age discrimination under the ADEA, and read that way, find that it is plausible.

To establish a prima facie case of age discrimination under the ADEA, Barlowe must demonstrate that "he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior

United States District Court
Northern District of California

qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz v. Eagle Produce Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). "An inference of discrimination can be established by 'showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably.'" *Id.* at 1207–08 (quoting *Coleman*, 232 F.3d at 1281).

The only potentially disputed pleading issue for the ADEA claim is whether Barlowe was discharged under circumstances giving rise to an inference of age discrimination. The facts he has alleged could plausibly have occurred as a result of retaliation based on age, although the allegations regarding the motives of Barlowe's superiors are thin. The same applies to workplace harassment, which does not reach the level of severe and pervasive conduct that a standalone claim would require. Given his age, alleged successful career, and resulting treatment in 2018 and after, it is plausible that he suffered a constructive discharge as a result of his age. To be sure, there is a paucity of allegations showing that his superiors intentionally discriminated against him, but an employee is often not privy to evidence of his employer's intent until after discovery. The pleading question is whether the facts alleged "allow the court to draw the reasonable inference that the defendant is liable for" age discrimination—the FAC is sufficient in this regard. *See Iqbal*, 556 U.S. at 678.

Defendants separately argue that Barlowe's "ADEA claims based on events that occurred before August 25, 2018, are barred because [he] alleges he did not contact an EEO counselor until October 9, 2018." Mot. at 9 (citing FAC ¶ 19). This argument is premature. There is only one ADEA claim, and allegations of discriminatory conduct after October 9, 2018, have been made. It may well be that the continuing violations doctrine will apply to conduct prior to October 9, 2018, but I will not reach that issue until after discovery is completed.

## II. WPA Claim

The WPA makes it unlawful to "take . . . a personnel action with respect to any employee or applicant for employment because of . . . any disclosure of information by an employee or

United States District Court
Northern District of California

applicant which the employee or applicant reasonably believes evidences . . . any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). The "applicable statutes and regulations [of the WPA] establish a comprehensive scheme whereby federal employees can obtain administrative and judicial review of their WPA claims." Kerr v. Jewell, 836 F.3d 1048, 1053 (9th Cir. 2016). "As a general matter, WPA claims must be presented initially to either the Office of Special Counsel (OSC) or the MSPB [Merit Systems Protection Board]." Id. (citing 5 U.S.C. §§ 1214, 1221(a); 5 C.F.R. § 1209.2). "If the employee follows the first path, she files initially with the OSC. She may appeal an adverse decision by the OSC to the MSPB." Id. (citing 5 C.F.R. § 1209.5(a)). "An adverse decision by the MSPB, in turn, is subject to judicial review." Id. (citing 5 U.S.C. § 1214(c)). Claims filed initially with the MSPB produce a judicially reviewable MSPB decision. Id. (citing 5 U.S.C. §§ 1221(a), 1221(h), 7703(b)).

Barlowe alleges that he "filed a complaint with the [OSC] in which he complained of retaliation because he had blown the whistle against an ATF Special Agent." FAC ¶ 10. But the FAC does not allege that Barlowe raised his WPA claim to the MSPB. In fact, Barlowe's opposition expressly recognizes that the WPA claim was not reviewed by the MSPB. Oppo. at 4 n.3. He instead asks that I find that equitable tolling applies for his WPA claim from June 2018, when he first filed a complaint with the OSC, to March 11, 2025, when the EEOC decided his appeal. Id. This would then allow him to "go to either the OSC and/or to the MSPB to get an administrative decision that he can then bring to court for judicial review." Id. He requests "leave to amend his complaint in order to begin administrative review of his WPA claim and then bring an administratively reviewed claim to court." Id.

Barlowe's request is DENIED. As defendants correctly recognize, the MSPB provides the "exclusive avenue for obtaining judicial review of a WPA claim." Kerr, 836 F.3d at 1057. Because Barlowe failed to exhaust the administrative process prior to filing his complaint, I lack jurisdiction over his WPA claim. See id. Whether equitable tolling applies or not is a question for the MSPB. See id.

"[F]ailure to exhaust administrative remedies is properly treated as a curable defect and should generally result in a dismissal without prejudice." City of Oakland, Cal. v. Hotels.com LP, 572 F.3d 958, 962 (9th Cir. 2009). Accordingly, I DISMISS Barlowe's WPA claim WITH LEAVE to amend.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Barlowe's FAC is GRANTED IN PART and DENIED IN PART. Barlowe may amend his First Cause of Action to separately state the theories alleged or stand on the FAC as written. He shall have twenty (20) days from this Order to file an amended complaint.

**IT IS SO ORDERED.**

Dated: May 12, 2026

_____
William H. Orrick
United States District Judge

United States District Court
Northern District of California

10